We will hear argument first this morning in Case 23-1095, Thompson v. United States. Mr. Gaird. Mr. Chief Justice, and may it please the Court, Section 1014 punishes only false statements, not true but misleading ones. And we know that from the text, the context in the statutory code, and this Court's precedents. At the outset, at its most basic, the word false means not true. It is therefore implausible to suggest that the statute that punishes false statements includes some types of true statements. False and true but misleading are different concepts. When Congress means to prohibit both, it does so explicitly, using both terms, as it has in over 100 places in the United States Code. The government would put this all down to serial, thoughtless redundancy. But that violates the first principle of statutory interpretation, to heed the text. The Courts below erroneously held that Section 1014 punishes misleading statements in addition to false ones. We are asking the Court to correct that legal error and to remand to the Courts below for determination of whether Mr. Thompson's statements were false or only misleading. I welcome the Court's questions. How would you define false and how would you define or distinguish that from misleading? A false statement is one that is not true when compared to the objective facts. A misleading statement is a statement that depends on the reasonable hearer's understanding. The term misleading, by its nature, focuses on what the hearer hears. The term false relates to an objective fact about the universe. Do you think there could be overlap between the two? There definitely is overlap, Your Honor. Many, many false statements are misleading and many misleading statements are false. But that does not mean they are synonyms, as this Court has recognized on a number of occasions, including in the McQuarrie case where the Court dealt with Rule 10b-5 and held that 10b-5 is two parts. The first penalized only expressed false statements and the second half-truths, which it referred to as misleading omissions. Often we see false and misleading paired, and you think of it, there's a tendency to think of those two paired, false and misleading or false or misleading. Why wouldn't we do that here as opposed to just taking a literal view of false? So when we see them in these 100-plus statutes, it's always in the disjunctive, false or misleading, suggesting that those are two different things. And they do have different meanings because false is an objective question. If I say the sun rises in the West, that is a false statement, and it doesn't matter what the perception of the listener is. So I think that there is a good statutory context argument, a very good statutory context argument, for suggesting when Congress says false, it means false, not misleading. Otherwise, there would be 100 statutes from the Commodities Exchange Act to the Securities Exchange Act to a number of labeling statutes down to the Peanut Statistics Act and the act that penalizes false or misleading statements by an officer of the administrative office of the U.S. court to either make false or misleading statements. Congress chose not to do that here. I take it you are not arguing that the statute requires that the statement be literally false when viewed in isolation. No. Is that correct? I'm sorry, Your Honor. Is that correct? That is correct. That is your argument. That is not our argument. As this Court said in Bronstein, and I would point the Court to footnote 3, the context that's relevant is the question that's asked, not the other circumstances. But obviously, it would be absurd to try and judge a statement in isolation from the question it answers. So can I just ask, even if we accept or agree with you that the statute covers only false statements, based on what you've said you believe a false statement is, I guess I don't understand how that helps your client in this case. Because the amount of money that he borrowed or that he owed, I would think, is a knowable fact with one correct answer, and that it doesn't rely on any sort of perception of the hearer or whatnot, however you've defined misleading. So why would we send this back for the lower court to assess? Your Honor, I'd point out at the outset, I'm sorry.  I applied this standard to the facts of the case, and so this Court would be doing it for the first time. But the statements that were made here, the prosecutor explicitly told the lower court, and this is Joint Appendix 144, what Mr. Thompson said was literally true, but it was not the whole truth. Mr. Thompson was never asked, how much did you borrow, and did not therefore respond, I only borrowed $110,000. My understanding was that he wasn't asked anything. He was sent an invoice after the bank closed, and the invoice listed the various loans that he had made and the amount of interest that, according to the statement, he owed in total. And so I don't understand why that's not tantamount. His response, his apparently three times going back and saying, no, I owe $110,000, why is that not a false statement in that context? The invoice didn't have the details. It said the unpaid principal balance was $269,000. So if we take that as an implicit question, do you owe $269,000, his statement was, I borrowed $110,000. I had a promissory note for $110,000. That statement, I borrowed $110,000 on a $110,000 promissory note, is absolutely true. There were no other notes concerning the later advances. And what Mr. Thompson did, if you consider the invoice to be an implicit question, was effectively to change the terms of the question from how much the principal balance was, how much he owed, to what he borrowed in a particular note. And that brings it squarely within the rule of Bronson, where everyone knew that Mr. Bronson was being asked whether he had ever had a personal. Would we have to assess at all the reasonableness of that interpretation on his part? In other words, it seems to me that you could also interpret the invoice as asking him to verify, you know, how much did you borrow? How much do you owe? If that's the question, then to respond $110,000 when there are other obligations outstanding is false. I don't think so, because if the question is how much you owe, that's a different issue than borrow. And Mr. Thompson gave an answer that was actually true. Sorry, how is it different from borrow? Because obviously what you owe depends, a great deal of what you owe is the interest on the loans. So Mr. Thompson, in fact, borrowed $219,000. He got an invoice saying you owe $269,000, and his response was a true response. But either way, it wasn't $110,000. That's right. And if he had said in response, I only borrowed $110,000 and not a penny more, then his statement would have been false. But he didn't say that. What he said was, I borrowed $110,000. I had a promissory note for $110,000. It's misleading, and we concede that, but it is not false. Do you regard it as a material omission case? I'm just trying to figure out. I mean, I agree with you there's a distinction between, you know, it's a Sixth Circuit opinion distinguished between material omissions and concealment and falsity. What do you think your case falls into? Is it a material omission of the other $169,000? I think that's the right way to look at it, Your Honor. It's what this court in Macquarie called a half-truth. Some information has been given. Other information that would be necessary to make the statement completely true has been left out. I mean, I guess I just see a difference between what your client said and some of the hypotheticals in your brief. Like you gave the example of a borrower who tells the lending institution, well, I have a lower interest rate offered someplace else, but doesn't mention that that requires a much bigger down payment. I can see that as an omission. It's a material omission insofar as you're trying to represent it as a better deal, that you're trying to get them to match, but it's true, the assertion. I mean, you can separate out the interest rate from the amount of the down payment, and you look at what the statement is asserting. What it's asserting about the interest rate is true. I guess yours is just a little – I just see your client's is different, because maybe it's because what he's asserting, and I think these are the questions you're getting from Justices Kagan and Jackson, sounds an awful lot like all I owe is $110,000. Well, the perception of the listener could have been that, but in fact it wasn't, as the testimony made clear that the listener actually thought that he just didn't know how much he borrowed. Isn't it a lot like the example that's given in Braunston, where you've entered a store 50 times, and you say, I entered the store five times? And, I mean, that's true. In the course of entering the store 50 times, you entered it five times, but it's obviously false if what the purport of the statement is, is I entered it five times rather than 50 times. And the same thing here, you know, I owed $110,000 rather than $260,000. I don't think so, because the principle set forth in Braunston in that footnote is that understating a number in response to a specific numeric inquiry is a false statement. Mr. Thompson did not understate the number in response to a specific numeric inquiry about how much he borrowed. Because I don't know exactly where this requirement of a specific inquiry comes from. I mean, there can be various contextual things that go to whether a statement is true or false. One of them is, what did they ask you? But there are other ways in which, you know, if I say, I made $100,000, and I'm speaking of Canadian dollars, but everybody listening to me is thinking, you're in the United States, of course they're thinking American dollars. I mean, that's just false if I say I made $100,000 and in fact I made $70,000 or $130,000 or whichever way the exchange rate goes. But, you know, so I guess I don't get this like, oh, it's got to be an inquiry. I mean, there was an implicit inquiry here. The guy was calling to say, you got the number wrong. It's just as if somebody had said, did we get the number wrong? And he said, you got the number wrong, it's $110,000. When it was in fact $260,000. I don't think so, Judge, Your Honor, because the statement he made was tied to the personal note, and that was true also of the call with the FDIC. It's true that a statement that is volunteered can be a false statement. So if Mr. Thompson had walked into the bank and shouted, I only borrowed $110,000 and not a penny more, that would be a false statement. But instead what happened is that there's this invoice about what he owed, and he made a statement about what he borrowed under his personal note. And I think that the clearest evidence that that is not a false statement comes from the government's confession on our motion for judgment of acquittal. I'm totally confused, okay? He took the statement the bank sent to him. I'm quoting him. I have no idea. The numbers you sent me shows that I have a loan for $269,000. I borrowed $100,000, period. So if he borrowed $219,000, $215,000, $150,000, $160,000, it wasn't the $100,000 he said. I don't see how that's literally true. That's literally false. He borrowed more than he said he did. Justice Sotomayor, I think that by putting the period after the $110,000, we're not getting the full context of the statement. He said a few more words about the circumstances, and then he said, I had a note for $110,000. So that I think that his statement So he had a note for $110,000 might be true, but he was asked, what did you borrow? And he said, only $100,000. I don't understand how this is, I think, where Justice Barrett is confused, which is, if the question is, did you enter 50 times, and he says, I entered 10 times, it's not literally true. It's literally false that he entered 10 times. I agree that the hypothetical is a false statement. But Mr. Thompson was not asked how much he borrowed. The implicit question is what the total debt was. As I read the jury instruction here, the jury instruction didn't use the word misleading. It said, was his statement false? Correct. So the issue here now is, would a rational juror have concluded that this was a false statement? Correct? That's correct, Your Honor. So I hate the word literally, because I don't know what it means. I think that the question is, did he make a false statement? And could a rational jury have understood him to have made a false statement in the way that I read this? And that goes back to the question presented in the procedural history, Justice Sotomayor. No, that goes back to, do you get a directed verdict, or is this an issue that we leave for the jury? So do we vacate and remand for the court below to decide that? I think you have to vacate and remand for the court below to decide it, because neither of the courts below reached this issue. Both believe they were bound by a Seventh Circuit precedent called Freed to hold that it didn't matter whether it was false or misleading, the statute captured misleading statements. We've been talking about what your client thought or knew, you know, maybe he did this or that. Does that matter at all? I mean, is it a different case if your client can say, I thought they meant, you know, the amount of the first loan, or if there's evidence he went back and says, well, they asked me this, you know, and I know they're talking about 269, but I think I might be able to fool them or something if I say 110. Is it the objective listener, how that person would understand it? Or do you go back and say, well, if he knew about it, then it definitely is false. But if he was confused, then maybe it's not false. Does the statement vary depending upon what the defendant knew? No, it doesn't, Mr. Chief Justice. So just to be clear, then, that means all the discussion about what he thought and all that, that's beside the point. It's absolutely beside the point. Truth and falsity, when Congress uses the term false, because it often uses the term misleading, which points to the perception of the listener, we know when it says false, it means something objective. Well, there still has to be a mens rea, though, right? And there is. So it has to be false, and you know it's false. Right. To be convicted, correct? Right. The evidence of his mens rea, the mens rea actually has two parts. One is that it has to be knowing, and the other, it has to be for the purpose of influencing the institution. And there was evidence in the record from which a jury could have found the mens rea, and we haven't challenged that. But the mens rea is a separate element. But are you saying that no reasonable jury could have found the statement to be false? That is our argument, Your Honor. No reasonable jury could have found the statement, I owe $110,000, to be false? Yes, Your Honor. In the context of the question, if we go to the call with the FDIC, the FDIC agent said, we didn't ask you a question. What we did was start out by talking about his personal note. And Mr. Thompson, in a discussion about his personal note, said, I borrowed $110,000. That was absolutely true. Because that is the important inquiry here, isn't it? You say that the district court was under the misimpression from the Seventh Circuit precedent that misleading was okay. But in fact, the instructions made clear that the statement needed to be false. And the jury convicted on those instructions. And so, for you to win in the end, it has to be that no reasonable jury. I mean, that's a pretty deferential standard that we give to the jury. No reasonable jury could have found this to be false. That's right, Judge, Your Honor. And if we don't think that, we should just say so, I take it. Because otherwise, what's the purpose of vacating if we don't think that that's a particularly hard question? Well, this court would typically, for prudential reasons, not be the first court to apply the law to the facts. And we think that the district court and the court of appeals are in a better position to assess that issue. They didn't do that because they made a mistake about the law. So I do think that no rational jury in this context could have found that. And certainly the district court could have made that determination but didn't reach it. The question presented in this supports what you just said. The question presented was just the legal issue, right, not will this court parse the statements about a loan. I don't know. That's not what I thought we were granting cert on. I thought we were granting cert on a legal question. We resolved the legal question. Justice Kavanaugh, I think that you're absolutely right. I mean, the invitation by my friends from the government here to delve into the facts is, I think, not surprising given the strength of our legal argument. But this court granted cert to determine whether misleading statements are, in addition to false ones, are punished by the district. Well, tell me again, what is the difference between a statement that is false in context, not literally false when viewed just by itself, but false in context, and a statement that is misleading? So a statement, let's take an example of a statement that might be misleading. If I go back and change my website and say 40 years of litigation experience and then in bold caps say Supreme Court advocate, that would be, after today, a true statement. It would be misleading to anybody who was thinking about whether to hire me or Mr. Francisco or Mr. Waxman, right? But a false statement would be if I had not ever argued in the United States Supreme Court. Well, that's mildly misleading. Maybe at best, I don't know that that's going to mislead anybody, but at best it's mildly misleading. It is, though, the humblest answer I've ever heard from the Supreme Court podium. So, good show on that one. I could argue for Mr. Francisco and Mr. Waxman. As far as the question presented is concerned, okay. But, I mean, maybe this, I don't know how this misleading idea even got into the case. This is just maybe sloppy work by the Seventh Circuit. But the instruction was you have to find that it's false. You could have argued that, no, it has to be literally false, viewed by itself. You didn't argue that. In fact, my understanding is that the defense originally had asked for an instruction on literal falsity and then withdrew it. And then the jury found that the statement was false. And you're just saying no reasonable juror could view this as false in context? That's an awfully hard argument. So what's the point of remanding this to the Seventh Circuit? Just as kind of a punishment for having introduced this misleading idea into the case? No, I definitely don't think the court would want to do that. But this is an important statute that deals with people's dealings with sophisticated financial entities. And it is important for the court to give some guidance on the question of whether a statement is misleading or false, precisely because the statute is so important and such broad application. As the court knows, in the Wells case, this court correctly found that there's no materiality element to the statute. So this statute could be used extremely broadly to punish a number of types of dealings between individuals and very sophisticated financial institutions. Also, along those lines, in terms of whether a remand is worth it or not, I take it you don't dispute that you got a tough row to hoe with the standard, and no reasonable jury could have concluded. But here we have, as you say, an incredibly sophisticated questioner, the federal government, no less. And the question, if it is a question at all, it's a statement, U.O. 269, he responds, I borrowed 110. The government itself says it understood him to be confused about how much he borrowed and how much he owed. And under those circumstances, we can make a judgment or we could maybe leave it to somebody else to do it in the first instance. Them's our choices. Is that about it? I think that you've captured it, Justice Gorsuch. The context here is not a couple of unsophisticated entities or individuals who've never had any financial dealings. But you have a tough row to hoe? It's definitely a tough row to hoe whenever you're asking a district court to find that no rational jury could have found something. But there's a lot of evidence from which we can make a solid argument, an argument that I believe is correct. Could you spin that out, please, first? Pardon me? Could you spin that out? Yes. Three data points. The first is that the government conceded below that the statements were literally true. The second is that, as I've said, in the call with the bank, the statement that was made was, I borrowed $110,000. I had a personal note for $110,000. Both true statements in the light of not a precise question or, indeed, even a question at all. And then the call with the FDIC was with these two FDIC examiners, and they made two comments that were very critical. The first is, there was no question about how much he borrowed or how much he owed. And the second is, there was no question about how much he borrowed or how much he owed. Instead, they asked him about his personal note, and he said, they loaned me $110,000 on my personal note, which was true. And both of the examiners and the witness from the call center for the bank all testified that he didn't seem to know what it was he had borrowed. So, I do think there's a good basis for the district court to make this decision in the first instance. And I think that this court should decide the important legal issue to make sure that prosecutors don't over-enforce this. Thank you, counsel. None of all this is pertinent on the home improvement loan statement, right? Correct. You agree that's completely false? That is a false statement. Okay, thank you. Justice Thomas? Justice Alito? Well, your last comment is a fair one, but doesn't it go to a different question? It doesn't go to the question whether the statement was false in context. It goes to whether he knew that it was false. It's a mens rea question. It's not a question of the actus reus, which is the utterance of a false statement. I agree with you that it goes to mens rea. But if we were to take the perspective of my friends to think that the perception of the listener mattered, that evidence would bear on this question. We don't agree that perception matters. In fact, the government does not cite a single case from this court suggesting that the question of truth or falsity depends on the perception of the listener. As a matter of fact, the very concept of misleading is from the perspective of the listener, an objective listener, and Congress knows how to make that relevant. Well, I'm totally confused by your argument, because unless you're arguing literal falsity, then falsity in context does depend on how people would understand the statement. It does concern the perception of listeners. I don't think so, Your Honor. I think that the falsity is an objective concept. If I say that the sun rises in the West, that's false, and it doesn't matter whether it misleads you or not. It may not concern the perception of the particular person to whom the statement is directed, but it does concern the perception of some kind of listener. Otherwise, I don't understand the concept of falsity in context. Well, if I make a statement and there's no listener at all, it is still capable of being true or false. And my point is that Congress over and over tells us when it wishes the perception of the listener to count by using a term that explicitly refers to the perception of the listener. Justice Sotomayor? Justice Kavanaugh? Your client's already served the sentence, correct? Yes, he has, Your Honor. The prison time's already been served, so that's over. And what's still potentially at stake is restitution? No, the restitution was resolved by the Seventh Circuit and has been paid. And that's not an issue before this court. Okay, so it's just a-okay, thank you. Yes, sir? I just want to take one more crack along the lines of Justice Alito, those questions that he was asking you. So am I right, and I kind of take this from your reply, that you've backed off this idea that it should be literal falsity? I think that the right way to say it is falsity in context of the question. Okay, so we're not talking about literal falsity, because you talked a lot about that in your opening brief. Okay, so we're not talking about literal falsity, we're talking about falsity in context. You suggested, both in your brief and then I think even more clearly today, that the only context that matters when we're looking at cues is the question to whom-to which the defendant was responding. Is that your position? Not-not quite, Judge-Your Honor, I'm sorry. Okay. Trial lawyer. Justice Barrett, the context is the question that's asked, the statement that's made, and the objective facts. So if the statement is very specific, if Mr. Thompson has said, I only borrowed $110,000 and not a penny more, and that was essentially the charge, then that would be a false statement. So you have to look to the question, the answer, and the objective facts. Okay, so it's not just the question. It can be surrounding circumstances as well as the question. I would say the objective fact of what he actually borrowed. Right, right, right. Yeah. Right, I understand that. But I'm just saying, you know, when we're trying to figure out what a statement communicates, I guess, I mean, I guess I agree with Justice Alito about how communication works. If we're asking what a statement communicated, and William tells us there has to be some sort of statement, there's an assertion. If you ask what that statement communicated, you have to have some basic understanding of how people use English. That's how the jury is going to decide what a reasonable person has found the statement to be false. So, I mean, I agree you don't look at any kind of idiosyncratic understanding, maybe, of the person on the other side of the table. But, I mean, you do have to have some kind of understanding of how normal people would understand this in the context of the situation. Correct? Well, Justice Barrett, I disagree with that, and so did this court in the Bronson case. In the Bronson case, it was absolutely clear what the questioner was driving at. He wanted to know if the person had had Swiss bank accounts. And the answerer said, well, my company did. And it wasn't pursued. And so the situation is very analogous. If Bronson's right, then we can't look at what the perception of the listener was. We have to look at only the context of the question, the answer, and the objective facts. Justice Jackson? So, I guess I don't understand how, on remand, the Seventh Circuit could make the kinds of determinations that you said that they could make in response to Justice Gorsuch. And the reason is because we had a trial in this case. We had a trial in which, presumably, those very same arguments about what the statement meant to your client, what the bank examiner said, etc., etc., etc., were evidence that was presented to a jury that had been instructed that they were supposed to make a determination about whether his statement was false. Right? That's correct, Your Honor. Okay. So, why isn't the Seventh Circuit's only potential response on remand to determine whether any reasonable jury, given that set of circumstances and evidence, could have reached the result it reached? I don't think the Seventh Circuit could just pretend as though the jury didn't make a determination in this case and answer the question, does it think there was a false statement here. Right? That's right. I think that it's very likely that the Seventh Circuit would remand to the district court that heard the evidence. And there is a very exacting standard, as Justice Jackson, as you know, for a motion for judgment of acquittal. So help us to understand whether all of that is, like, really not necessary, because it's pretty clear that a reasonable jury could have made this determination. What is your best argument as to why, for example, and I'll just give you the analogy from the government, the analogy about the kid in the cookie jar, that the mom says, how many cookies did you eat? Or did you eat cookies? Or whatever the question is. And the kid actually ate, and I'm now making this up, ten cookies. And he responds, I ate three. Why is that not a false statement? Your hypothetical, the answer to your hypotheticals is actually two-fold. If the mom had said, did you eat all the cookies, or how many cookies did you eat, and the child says, I ate three cookies when she ate ten, that's a false statement. But if the mom says, did you eat any cookies, and the child says three, that's not an understatement in response to a specific numerical input. All right, so here's the question here. The question, I guess, in response to that answer is, why wouldn't it be reasonable for a jury to interpret the submission of the invoice to be the kind of specific question that would require him to provide an answer? I mean, we don't have a particular question. We have his interpretation of the question and then answering it in a certain way, which you say doesn't make it false. But in the context of what a reasonable jury could have determined, I don't understand what your argument is to why a jury couldn't have interpreted what happened here to be calling for a specific response to the question, how much do you owe? Well, I think it's difficult to conceive of an assertion in an invoice as being a specific numerical. Difficult, but impossible? The question is, could a reasonable jury have interpreted it that way? I don't think so, Justice Jackson. And the reason is, among others, that there wasn't a question posed at all. The witnesses testified that he was, or the evidence showed that he was talking about his personal note, not the total amount that he owed. And the government conceded that what he said was, and I quote, literally true, but not the whole story. Thank you, counsel. Ms. Flynn? Mr. Chief Justice, and may it please the Court, Section 1014 prohibits any false statement. And like any other collection of words, a statement is false if it conveys an untrue message to the listener in context, even if the precise words used, considered in a vacuum, could possibly carry another meaning. So here, when in response to receiving an invoice telling Petitioner that he owed the FDIC $269,000, Petitioner then told the FDIC's agents that he was shocked by the letter, had no idea where the 269 number comes from, and had borrowed $110,000, he made a false statement, because he clearly conveyed the message that he did not owe the higher amount. And 12 members of the jury in this case who were not given a specialized definition of what false means, and therefore must have applied the concept as ordinarily understood, agreed. Indeed, on page 7 of his reply brief, Petitioner himself agrees that context obviously matters in determining whether a statement is false. I understood my friend to reiterate that position again today. So now it appears we're just debating what context the jury may consider as a matter of law. And to the extent Petitioner is arguing that you can only take account of the immediately preceding question, we urge the court to reject any such rule. The jury should assess a speaker's meaning the same way the original listener would have, in light of other parts of the conversation and other circumstances that naturally bear on meaning. Our position in this case is not that false encompasses anything that might be characterized as misleading or any failure to disclose pertinent information. It is that a statement is untrue if it states only a portion of the truth on the subject it addresses in a context where the statement would be taken as both accurate and complete. If, like Petitioner, the speaker knowingly conveys that untrue message and does it with the specific intent to influence the FDIC to not fully collect on his debt, that violates the statute. I welcome the court's questions. So it doesn't really matter in this case whether there is a difference between false and misleading? Our position in this case is that Petitioner's statements were false. That's how the jury was instructed. Our position is just that you assess the falsity of something, the inaccuracy of it, by looking to the context and whether a false message was imparted. There's been a lot of talk, though, today about what kind of rule the Seventh Circuit applied in this case, and I think the crux of the Seventh Circuit's analysis completely aligns with what I just said. I think you can see this in particular at pages 10a and 13a of the petition appendix. On 10a, the court said, even if he never used the precise words, the implication of Petitioner's statements was that he owed Washington Federal no more than $110,000, something that was untrue. And then on 13a, the court talks about the unmistakable impression left by his statements and how the jury found in its verdict that he conveyed the message that he falsely stated that he only owed $110,000 and any higher amount was incorrect. But in general, do you think there's any difference between the statutes that say false statement and the statutes that say false and misleading? Because it sounds to me that you would argue that when it says false, that includes misleading statements in context. So is there any difference? We are not taking the position that the word misleading does no work in statutes in which it appears. We think there is some overlap between these concepts. As I understood my friend to agree. But when we say something has to be false in context, we mean it has to state, the statement itself has to convey a false meaning directly, not lead the listener down a path perhaps to a foreseeable conclusion that additional information might have obviated. But here, when Petitioner says I borrowed $110,000 in response to what was essentially a question from the FDIC saying do you owe $269,000, that is directly conveying through his statement that he only owed that amount. But isn't what you said... I was going to say, that's a tough... It's tough to parse, it seems to me, in a lot of cases. I'm not making these up, I think these are in the case. But, you know, a police officer pulls a person over, thinks he's drunk, says, you know, if you had one cocktail and four glasses of wine. I mean, is that treated differently under the false statute that says just false and the statute that says false and misleading? I can see that being misleading, but I'm not sure it would qualify as false under the literal meaning of the word. I don't think those would be treated differently under those two statutes. I believe that is a false statement because a reasonable juror could find in context that when an officer pulls somebody over and asks, have you been drinking, they're asking for a complete account of how much you've been drinking. And when the person says, I had just one cocktail, that implies... It didn't say just. Oh, I'm sorry. My hypothetical is, I had a cocktail. I'm sorry, I was repeating... Or I had one cocktail. Right. And I think in context, a reasonable juror could find that the officer was asking for a complete account of how much the person had had to drink, given that the officer was clearly trying to determine whether or not they were inebriated and could not drive. And that's the kind of surrounding circumstance that we think is relevant here. And, I mean, that is what this case comes down to, is whether... Ms. Flynn, we didn't take this case to decide whether a reasonable juror could find that the defendant here, in context, made a false statement. As important as this case is, that's not why we took it. We took it to resolve whether this statute allows the government to pursue a theory of misleading rather than falsity, right? Well, you took this case where the facts presented are a numerical understatement. We didn't take this case to resolve it on the facts. We took it to resolve a legal question. And the legal question is whether, as the Seventh Circuit held, this statute permits a conviction for not just false statements but misleading ones. And that is a gloss that the Seventh Circuit has put on the statute. Are you here to defend that, or are you simply saying that even under a correct understanding of the statute, we would win and you guys should go ahead and decide what a no reasonable juror could have concluded otherwise? It's the latter, Your Honor, but I would add the qualification that here the only legal question... Really, you're asking us to apply the statute to a fact-bound error correction question? That's a little strange. I thought we took the case to decide whether the Seventh Circuit in Freed was correct. This statute permits convictions for misleading. Maybe we hold it does, in which case we affirm. Maybe we hold it doesn't, in which case we vacate and remand for this fact-bound question to be resolved by a lower court. In the first instance, I mean, we're a court of review, not first view, right? Well, as the case has narrowed during the briefing, the only legal dispute I take to be between my friend and us is what context matters in assessing falsity in context. But you're not denying that falsity is required by this statute? We are not denying that, no. I take it now maybe you're also agreeing that misleading is not enough. So it depends on what you mean. We believe that... Falsity in context is what's required by this statute, and more is not permitted. So if it's misleading in another sense, that's not good enough. If it is misleading in the sense that a person makes a numerical understatement and under-reports, if you're using the word misleading to describe that, we do think that is sufficient, but we do think the better way to understand this concept is falsity in context. So if we hold falsity in context as the standard, why wouldn't we vacate and remand? Because that's not what the Seventh Circuit held. Well, I pointed the court to two instances in which I do believe the Seventh Circuit reasoned that. But it said freed is our standard, and freed is either falsity or misleading, and this dichotomy it created, and it proceeded to say these statements were misleading. The court also quoted the portions of freed where the Seventh Circuit said that. You look at the natural import of what the speaker is trying to say. It said on 9A, in the end, we need not decide whether Thompson's statements were literally true because his argument runs headfirst into our precedent. We already decided in freed that Section 1014 criminalizes misleading representations. Do you agree with that? If you read that sentence to mean all misleading representations, no, we do not agree with that. Okay, and that's the question I thought we – I agree with Justice Gorsuch. I mean, we say it all the time that we don't. And why don't you agree with that? Like, what misleading statements do you think they had in mind that you would walk away from? Well, it's hard to know because, of course, the Seventh Circuit was thinking about the facts of this case when it used the word misleading, and that's why I'm trying to be careful. I mean, I'll tell you the statements that I think you should walk away from, and you tell me if you agree. I mean, there are a whole world of – I wish I had some good examples at hand, but we've seen these kinds of cases – these kinds of statements in many cases over the years and talked about them where somebody says something, and it's not just literally true. It is true in context. The reader is hearing the statement in exactly the way that – but there have – but other statements are not made that would cast a different light on a situation. And so the person says, oh, I was misled because I know one thing that was relevant to the situation, but you didn't tell me some other thing that was relevant to the situation and relevant to my decision-making. And there are all kinds of cases in which we say, in some statutes, that omission makes you liable, but in other statutes, it doesn't. So in this statute, it seems pretty clear to me that it doesn't. Yes, I would agree with that. So I guess when I read the Seventh Circuit, it's at least possible that the Seventh Circuit has that wrong, that the Seventh Circuit is sort of treating falsity and misleadingness as all of the piece and not making this distinction between when a statement in context is false and when that statement is true but nonetheless misleading because there's other stuff that's been left out. And I would say that even if you thought the Seventh Circuit was confused on that particular point, we know how they would analyze this case under the correct legal rule because the court said that, even if you never use the precise words, the implication of his statement in – I would think we could do two things at one time, right? We can both decide the legal question that if we think that the Seventh Circuit got it wrong and we can also say something about this case. And it might actually be useful to other courts out there to say something about this case so they know what we're talking about and what we're not talking about. Exactly. And I would add the further point that because right now we're just debating, I think, what context – at least between my friend and I – what context counts, I would think this court should answer that question as well and say it's not just the preceding question, it's the things – the purpose of the conversation, what was discussed before, the kinds of things that the listener would have taken into account, too. Because I think if you just say the preceding statements don't count, it's falsity in context, full stop, and then have this set of facts and send it back down, that could create a good deal of confusion. Well, don't you think if we grant a cert on that question, we get amicus briefs discussing that important question because that is going to have an effect on lots of statutes. You're asking us to decide something much broader than the straightforward question, as Justice Gorsuch said, that was in the question presented and that was in the cert petition, and you don't – I think you've said you don't really agree with what the Seventh Circuit said. Well – and then you said, well, it'll be easy – it's easy to know what the Seventh Circuit would have done. Well, if that's true on remand, that's what they're going to do. And we argued at the cert stage as well that false means false in context, and so I believe that to be fully within the case that's entired. The question presented is whether the statute prohibits making a statement that is misleading but not false. That's the QP, not what qualifies as falsity, how much context, who shot John. None of that's in the QP. And I think Justice Kavanaugh has a very good point that if we were really going to tackle what is falsity, I mean, we might want to consult a few philosophers while we're at it, but we certainly would have had a different set of amici and a different set of briefing than we had in this case if we were going to tackle that question. I don't think – I mean, respectfully, Your Honor, I don't think that's correct. I think the concept of falsity is one that we fully trust jurors as laypeople to assess and make determinations about and engage in line drawing. Of course. You're asking us to say as a matter of law this is always in and that is always out for determining falsity, and that's just not in the QP, counsel, and it has ripple effects not just in 1014 but throughout all of Title 18 because there are literally – well, not literally. There are a lot of false statement statutes under which you can proceed, and many of them do distinguish between falsity and misleading statements. The question presented as – are you going to – I'm sorry. Well, I hope Ms. Flynn would have a response. Oh, sure. Well, I mean, I'm not sure. One observation I would make about the question presented is that it asks whether making a false statement under – whether you can satisfy the requirement of a false statement under 1014 by making a statement that is not false, and, I mean, of course we don't agree with that. And so in that sense, the question presented answers itself. The issue in this case has always been what does false mean, and our argument is falsity in context, and I do think the legal question answering it is – I mean, if we're all – Where is that in the QP, Ms. Flynn? I'm sorry. You just said in the QP is a question of what makes a statement false. Yes. I don't see that. I see whether 1014 also prohibits a statement that is misleading but not false. Right. That's the QP. Ms. Flynn, isn't the problem that in the government's view the question presented, as Justice Gorsuch is reading it, is actually not implicated on these facts, meaning you don't see that what happened here is misleading in the sense that it was literally true but led someone down the wrong path. You see this as false. That's why you keep arguing it that way. And so even though we take questions presented to answer legal questions, we do so ordinarily in cases in which the facts actually implicate that question. So I think the confusion is arising because the government seems here and in your briefs to be making arguments about the falsity of this particular set of circumstances, the context that you keep talking about, and that you're not really addressing a situation in which you believe there was a misleading but not false scenario. So to answer the question, when and under what circumstances does this statute cover misleading but not false situations on these set of facts is like a mismatch because you say that's not happening here. Yes, I would agree. And I would also just reiterate that here it's not like there was a legal error, some kind of legal confusion that infected the jury's verdict because here the jury was just told they had to find that Petitioner knowingly made a false statement. So this takes us back to Justice Alito's original point. It seems like the Seventh Circuit, and perhaps Petitioner in his arguing, injected this notion of you should be looking at this as a misleading but not false situation, and that kind of got carried away and taken over when really the jury was instructed on falsity. You say the facts establish falsity. I guess the one thing against you is your colleague on the other side said the government at some point conceded that this was a misleading but not false case. So can you explain why that happened and what we should take from that? Sure. So my friend points to a moment in one of the hearings about this issue where government counsel was sort of paraphrasing the kind of argument that Petitioner was making about literal falsity, but elsewhere in that same hearing the counsel said that Petitioner's statements were, quote, not true. I believe three times. They maintained that position afterwards. Of course we maintain that before the Seventh Circuit as well. So I do not believe it's fair to say that we have conceded that his statements were literally true. Counsel, assume for the sake of argument that we don't accept your position that misleading and false are synonymous, that there are some things, borrowing the phrase of the other side, some things that are true, but misleading, just as if you say a packet of toxic mushrooms is 100% natural. Toxic mushrooms are 100% toxic, but it may be misleading if you're selling it because people may believe that it's safe, that you can actually eat it. So that's misleading but not false. So assume that there's a difference between the two. And we say this is a Bronson case. It has to be a false statement in the sense of Bronson. What is the difference or is there in what you're saying about what falsity means in this statute and what we said it meant in Bronson? The other side argues, and there's many who have described Bronson as saying you need literal falsity or literal truth. So how do you distinguish what you're arguing or how do you get what you're arguing from what we said in Bronson? If we answer the question presented, that you can only prosecute false statements, all right? Staying within Bronson, how do you argue this case? So we disagree that the rule this court announced for the perjury statute in Bronson applies to the language of 1014. Assume we disagree because there the perjury was for making a false statement. Here if you make a false statement, you're guilty with some other knowingly, et cetera, et cetera, other elements. So just go back to the essence of my question. If we apply Bronson, do you win? Or how do you win and how does your theory fit into Bronson? I do just want to be very clear that I do not think this court should apply the perjury statute in Bronson. I understand that. I've said it three times. Assume. Okay. And then I would point this court to the footnote in Bronson where the court said, of course, understating a numerical amount in response to a question would qualify as literally false even under the rule that we're announcing today. And we don't think you need to have, of course, Bronson was talking about questions and answers during testimony, but we think that here, for instance, the invoice essentially served the same contextual purpose as a direct question about how much a petitioner owed, but the principle is the same. The court was saying, of course, if you understate part of the whole. Now we go to Justice Gorsuch's question. When we describe context, the other side says, what's the question asked directly or implicitly? But I think he's not going to say implicitly. What's the question you ask, what is the answer you give, and objectively do the facts support that answer? How would you describe what we're supposed to do? I think petitioner's limits to just the precise question asked is very artificial. I would draw an analogy to how this court looks at context of statutes, for instance. This court does not draw hard and fast rules saying we only look at the proceedings of that section. But that's what we did in Bronson. We looked at the question asked. In the context of cross-examination where the questioner is in full control of the witness's presentation by asking the question and against a background principle of Anglo-American law that we want perjury to be. If we disagree with you, is that the lesson you take from Bronson? That it's the question asked and whether the answer is objectively right or not? In the context of perjury, yes, I understand that to be the case. So, of course, I think we have to look at the question. But you're saying we should apply something different in other contexts. Then perjury, yes, I would. Thank you. Counsel, we've been talking about things that are technically true but misleading. Does it work the other way? Let's say you have statements that are technically false but not misleading. If someone's trying to sell you a horse and says this is the fastest horse I've ever seen. And, in fact, it's not. He's seen a faster horse. But I don't think purchasers would necessarily view that as misleading. They would view that as sort of normal sales talk. So can things be technically true, technically false, but not misleading? I don't think, in your hypothetical, Your Honor, that that would be considered false. Because it's in a context where, I mean, it's a qualitative opinion, for instance. And so the listener thinks that would be false. No, no, they had a race and the horse lost. Oh, I'm sorry. Yeah, so I think in the context of what is essentially sort of peppery, the common law, like the reason the listener sees that differently and there are common law doctrines that kind of give effect to that. And so, no, I don't think that would be false in your hypothetical. Ms. Flynn, just to back up about the QP. At least in your brief in opposition, the government did argue that the statute before us criminalizes misleading representations and is not limited to false statements. So it did make the misleading versus false argument there. And I think that was the government's position in defending Freed in the Seventh Circuit, at least initially. And now if I understand it, I just want to make sure I understand it. You're pivoting and saying, okay, Freed's wrong, misleading doesn't count. But falsity is more capacious than literal falsity. More capacious than Branstad. And we want to use this court as a vehicle, in this case as a vehicle, for expanding what counts as false beyond our precedent. And even though no one's litigated that precise question below, it's always been about misleading versus falsity. And even though that in this case it probably won't make a whit of difference, given you've got such a good standard available to you on remand and the likelihood of overturning the jury verdict is very low. Is that a fair summary of how the ball has bounced in this case? I would respectfully push back on a few aspects of that. You took the position in our opposition brief that the statements have to be false. No, no. Page 6 says Section 1014 criminalizes misleading misrepresentations and is not limited to literally false statements. I'm sorry, could you give me that page one more time, Your Honor? Page 6. I don't mean to occupy it. I guess I'm looking at the petitioner's claim that, well, the petitioner's claim that Section 1014 does not prohibit merely misleading representations is beside the point. We argued before the Seventh Circuit and in our opposition brief that the word false encompasses falsity by context. We rejected what we understood to be petitioner's argument that you have to assess falsity by virtue of looking at the precise words used in the four corners of the statement alone. I now understand petitioner to have walked away from that rule. And to resolve the only legal disagreement in this case, you have to decide what context counts. We know that the Seventh Circuit found that the unmistakable impression left by petitioner's statements in context was that he borrowed only $110,000 and no more. Counsel, do you agree with the First Circuit's pattern during instruction? It defines it. It says the statement is false if untrue when made. What if we said, you know, we disagree, the Seventh Circuit stated this too broadly, misleading statements don't count, just false statements, and we offered that definition of the standard? Would the government agree with that? Yes, we would agree with that statement. We agree that false means untrue. And then just not say anything else? Yes. You don't need to say anything else about what counts as falsity, does falsity in context, that sort of thing? We don't use the words literal falsity and then we just send it back to the Seventh Circuit? Yes, we agree with that. And that's consistent with the pattern during instructions in every circuit that has a pattern instruction for 1014. The only ones we've seen is that kind of language that says false means untrue when made. There's no attempt, they don't give a specialized definition for the jury trying to parse the issues we talked about today. Thanks. There's been a lot of talk about the question presented. The question presented refers to statements that are misleading but not false. So I don't see how we can answer the question presented unless we understand what is meant by a statement that's misleading and a statement that is not false. There's a distinction, there's a clear distinction if false means literal falsity, but Petitioner does not make that argument. And therefore, in order to answer the question if that's how we approach this, we would have to understand what the Seventh Circuit means by a statement that is misleading. And it's entirely possible that what they meant was a statement that is false in context. It's possible that they might have a broader understanding of what misleading means, but to be honest, I don't really understand the distinction between statements that are misleading and statements that are false. I will concede there may be some distinction. The connotation is different. I asked Petitioner's counsel what he thinks is the difference, and he gave me the example of his website, which is not exactly a rule. Maybe he'll take another shot at it and reply, but in rebuttal. But can you tell me what do you think is the difference, if any, between a statement that is misleading and a statement that is false in context? I think a statement that is misleading could encompass a broader category of things than just things that are false in context. And what would that broader category be? I know that's the connotation of the term, but if you want to nail it down, if we're dealing with a legal concept, it may be prudent, probably it is prudent, just to disregard the whole idea of a misleading statement here. The statute says false. It has to be false. Petitioner concedes it can be false in context. It doesn't have to be literally false. We could leave it at that. But if we were to go further in answering the question, what would we say about statements that are misleading but not false in context? One of the ways that we've described what we think that falsity is not encompassed, I'm sorry, that misleading might, is a failure to include additional pertinent information not on the same specific subject addressed by the statement. One example might be if I'm a tennis player and I say I won the championship, but I leave out that it was a forfeited match because my opponent failed a drug test. My statement, when you know that additional information, that doesn't render what I said false. It is still accurate. It's just that I did not take care to obviate what was probably a foreseeable inference that you would have thought I won a contested match. And it's the difference between the statement itself directly saying something inaccurate in context and leading the listener down a path. And do we know what the Seventh Circuit means by this phrase when they use it, this term when they use it in their opinions? I can't say we know for sure, but I will say that the court was, of course, thinking about the facts before it, which was this numerical understatement fact pattern. And we can look to the parts of the opinion where the court said that the unmistakable impression left by Petitioner's words was that he only borrowed this amount. I'm sorry, Your Honor. Thank you, Counselor. Justice Thomas, Justice Alito, Justice O'Neill. Would this be false under the example you gave? Would it be false under Braunston? The tennis player example? Yes. No. Why not? If I asked you, have you won a championship? If you asked me, have you won a championship? Not how. If I asked you, have you won a championship, and you answered the way you did, and that's why you got whatever job you were applying for, have you made a false statement or a misleading statement? I don't believe you made a false statement under Braunston or under the rule we're advocating for today. Okay. Justice Kagan? The doctor's trying to convince a patient to have a particular surgery, and he says, I've done 100 of these surgeries. It turns out that 99 of the patients have died. 100 of these surgeries. True statement, correct? Yes. In the context of where of, yes. But he doesn't say 99 people have died. He's now misled the patient, correct? Correct. But he hasn't said anything that's false. Correct. So that's the kind of thing where there really is a gap between a false statement and a misleading statement, right? Yes. And, you know, would it be helpful, in your view, to say something like that? There really is a difference. There might be overlap, but there really is a difference. Some things that are super misleading but that are not false. Your example of the tennis player, my example of the surgeon. Why not just say that and instruct the Seventh Circuit and anybody else who may not have a correct understanding of this that there is this gap? Yeah, I would not resist this court explaining that. I just am only resisting the possibility that you could say this statute does not criminalize misleading representations, full stop, without explaining that falsity by context counts, what that means, and that also leaving open the possibility that the facts here where the petitioner, in response to a statement, saying he owed a certain amount, said I'm shocked by that and I owe this different amount that a juror could not find as a matter of law that that is false. Justice Gorsuch? No. Justice Kavanaugh? Justice Barrett? Yes, I'm just going to put a pin in it at the end. What do you want this court to hold? So you told me that you would be happy with the First Circuit pattern jury instruction, which you understand to be the standard one, and Justice Kagan asked you would it be helpful to go on and say a little bit more to give guidance on what the distinction between false and misleading is. What would the rule line in an opinion be that would be ideal from your perspective? It would be that false means untrue or inaccurate, but that an assessment of whether a statement is untrue or inaccurate is the message being sent in context, and jurors, as a matter of law, can take account of context, including the purpose of conversation, other parts of it, and the meaning of the words used. And to affirm on the record in this case where the Seventh Circuit looked at this and found that a reasonable jury could find in context that what Petitioner said was untrue and match the charged false statement that the jury was instructed on. Justice Jackson? Going to Justice Kagan's point, I mean, there is a difference between false and misleading, but I take it that the government's argument is that the facts here don't really implicate that difference. So, in other words, you know, it would be as if in Justice Kagan's hypothetical, the question to the doctor was how many times have you done this surgery? And for whatever reason, the doctor said 10 when really he had done 100. That wouldn't be misleading. That would be false in the government's view, correct?  All right. And so just one other point about what the government's position has always been on this. When you said in response in the colloquy with Justice Gorsuch about what the government's position had been in the brief of opposition, could it be that you were referring to the first paragraph of the argument section where you say on page 5 that Petitioner renews his claim that he did not make any false statement within the meaning of 114, but his statements were false by any measure and his contrary argument would not entitle him to release in any circuit. No further review is warranted. And so your initial argument is that this is a false statement. And the part that Justice Gorsuch was reading was B on page 6 where you say even if Petitioner had only made a misleading statement, he still would have violated. But the government's point throughout this is that this should be characterized as a false statement. Is that right? Yes, that's correct. And if I could just clarify my back and forth with Justice Gorsuch. I understood our brief to take the position that we are understanding the word false and that includes contextual falsity. We have argued that Petitioner's statements were false. The jury was instructed that way. If we introduce confusion about whether or not a broader array of things that do not qualify as false but could be described as misleading counts, that is not the government's position, and I hope that I've clarified that today. Thank you. Thank you, Counsel. Mr. Hare, rebuttal. When we're looking at a statute, the most important thing is for us to look at the text of the statute. The government is committing the fundamental error of atextualism that this Court condemned in Wells and many other cases where it is trying to supply an additional term to the statute, a term that is used in many other statutes when Congress means to get at the perception of the listener about a statement, and that is the term misleading. Wells teaches us that you can't imply a new term into the statute because the Court thinks it might be a good idea or because close is good enough for government work. It's not. Justice Thomas's opinion for the Court in Rodkiski is another prime example of a statute where in that case it was the Fair Debt Collection Practices Act. The question was whether the statute of limitations implied a discovery rule, and the Court's opinion there looked at statutes that had been passed after the Fair Debt Collection Practices Act that had a discovery rule as well as statutes passed before and found that the statutory context rebutted the atextualist argument that you should imply a discovery rule into the statute. I think everyone, except possibly my friends with the government, recognize that there is a difference between false and misleading, and some of the Court's questions to the government ask, how do you draw that line? And my suggestion is the line is drawn by Congress because when Congress means for the relevant context to include the perception of the listener, it says misleading. It doesn't say just false. And the Court has offered a number of hypotheticals that clearly draw the line between misleading and false. And this Court's recent decision in the McQuarrie case dealing with Section 10b-5 could not be a clearer example. The Court there, of course, was dealing with a pure omission, but it had a nice explication of Rule 10b-5 and said the first section, the false statements part of 10b-5, deals with expressed falsehoods. The second section of 10b-5 deals with statements that say the truth but omit a material fact necessary to make the statement not misleading. Congress has done that in a hundred different places, but it didn't do it here. And so we should heed the text and recognize that because Congress did not use the word misleading, it was not intending that the perception of the listener matters. As we all know, falsity is an objective question. And despite the fact that people of the younger generation may talk about, I want to speak my truth, there is no such thing as my truth. It's true as an objective matter. I do want to touch on a couple of other things that the government suggested. The Seventh Circuit did, and I'm very glad that my friend mentioned it, say that the implication of this was false. The impression created was false. But that begs the question. Impression and implication go to the perception of the listener. The Court never said it was false as an objective matter. Instead, it said that it was not deciding that question. Thank you, Counsel, and case is submitted.